**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CAMILLE BURBAN,

        Plaintiff,

v.                                   Case No.   3:17-cv-262-J-34JBT

CITY OF NEPTUNE BEACH, FLORIDA,

        Defendant.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant City of Neptune Beach, Florida's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law (Doc. 11; Motion), filed on May 4, 2017.   Plaintiff Camille Burban filed Plaintiff's Response to Defendant City of Neptune Beach, Florida's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 21; Response) on May 30, 2017.   Accordingly, this matter is ripe for review.[1]

## I.    Background[2]

The factual allegations in the Amended Complaint (Doc. 9) relate to Burban's efforts to exercise her rights under the Federal Law Enforcement Officers Safety Act (LEOSA),

---

[1]    Also before the Court is Defendant City of Neptune Beach, Florida's Request for Oral Argument (Doc. 12; Request).   Upon consideration of the arguments presented by the parties, the Court determines that oral argument would not be beneficial in this matter.   As such, the Request will be denied.

[2]    In considering the Motion, the Court must accept all factual allegations in the Amended Complaint (Doc. 9) as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations.   Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).   As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

18 U.S.C. §§ 926B, 926C.   See generally Amended Complaint.   Thus, before summarizing Burban's factual allegations, the Court will provide an overview of LEOSA.

**A. Law Enforcement Officers Safety Act**

Congress created LEOSA in 2003 "to protect officers and their families from vindictive criminals, and to allow thousands of equipped trained and certified law enforcement officers, whether on-duty, off-duty or retired, to carry concealed firearms in situations where they can respond immediately to a crime across state and other jurisdictional lines."   S. Rep. No. 108-29, at 4 (2003), available at 2003 WL 1609540. LEOSA achieves this purpose by establishing "a mechanism by which law enforcement officers may travel interstate with a firearm."   Id. at 4.   As relevant to this action, LEOSA provides:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual [1] who is a qualified retired law enforcement officer and [2] who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce.

See 18 U.S.C. § 926C(a).   Thus, in order to carry a concealed firearm across state lines, an officer must satisfy two conditions.   Id.   First, the officer must be a qualified retired law enforcement officer, and second, the retired officer must carry the identification required by the statute.   Id.

With respect to the first condition, a qualified retired law enforcement is one who:

(1) separated from service in good standing from service with a public agency as a law enforcement officer;

(2) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under section 807(b) of title

10, United States Code (article 7(b) of the Uniform Code of Military Justice);

(3) (A) before such separation, served as a law enforcement officer for an aggregate of 10 years or more[3]; or

(B) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency;

(4) during the most recent 12-month period, has met, at the expense of the individual, the standards for qualification in firearms training for active law enforcement officers, as determined by the former agency of the individual, the State in which the individual resides or, if the State has not established such standards, either a law enforcement agency within the State in which the individual resides or the standards used by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State;

(5) (A) has not been officially found by a qualified medical professional employed by the agency to be unqualified for reasons relating to mental health and as a result of this finding will not be issued the photographic identification as described in subsection (d)(1); or

(B) has not entered into an agreement with the agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified under this section for reasons relating to mental health and for those reasons will not receive or accept the photographic identification as described in subjection (d)(1);

(6) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and

(7) is not prohibited by Federal law from receiving a firearm.

See 18 U.S.C. § 926C(c).

As to the second condition, LEOSA provides two methods by which an officer can satisfy the identification requirement.  Under the first option, the agency where the officer served issues a photographic identification indicating that the individual served "as a police

---

3       On October 12, 2010, Congress amended LEOSA to reduce the required years of service from fifteen to ten.  See P.L. 111-272.

officer or law enforcement officer," and that within the year, the individual has "been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm." 18 U.S.C. § 926C(d)(1). Under the second option, the individual must carry two documents: (1) "a photographic identification issued by the agency from which the officer separated," 18 U.S.C. § 926C(d)(2)(A), and (2) a separate firearms certification "issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State," 18 U.S.C. § 926C(d)(2)(B). The certification must indicate that within the last year, the individual met

> (I) the active duty standards for qualification in firearms training, as established by the State, to carry a firearm of the same type as the concealed firearm; or
>
> (II) if the State has not established such standards, standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm.

Id. Notably, critics of LEOSA feared that this scheme, in which States set their own certification standards, would "create a dangerous environment for out-of-State officers and citizens." H.R. Rep. 107-560, at 23 (2004), available at 2004 WL 5702383.

### B. Factual Allegations

Burban served as a member of the Neptune Beach Police Department (NBPD) from May 9, 2003, until May 31, 2013. See Amended Complaint ¶¶8, 22. Defendant City of Neptune Beach, Florida (the City) is "responsible for the supervision, training, instruction, discipline, control and conduct of officers at the [NBPD], and further makes policy for the NPBD with respect to issuances of identification cards for retired law enforcement officers."

Id. ¶5.

Based on her service with the NBPD, Burban asserts that she is a qualified retired law enforcement officer under LEOSA. Id. ¶¶21-30. With respect to the first criterion, Burban separated from service with the NBPD in good standing. Id. ¶23. Indeed, Burban "has email communications evidencing her good standing as of February 8, 2013," and "there are no further communications or documentation that her standing ever changed prior to her separation from NBPD." Id. Additionally, although the NBPD placed Burban on light duty status due to an arm injury in January 2013, by her retirement date, Burban had been "authorized by law to engage in or supervise the prevention, detection, investigation, prosecution, or the incarceration of any person in violation of the law," and "had statutory powers of arrest and/or apprehension under the Uniform Code of Military Justice." Id. ¶¶24-25. Further, Burban has completed over ten years of service. Id. ¶22. In addition, on April 14, 2017, Burban met, at her own expense, Florida's standards for qualification in firearms training for active law enforcement officers. Id. ¶29. Moreover, Burban has neither "been officially found, by a qualified medical professional employed by NBPD, to be unqualified for reasons relating to mental health, to be issued photographic identification," nor "entered into an agreement with NBPD in which [she] acknowledges that she is not qualified" for such identification due to her mental health. Id. ¶¶26-27. Finally, Burban "is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance," and "is not prohibited by federal law from possessing a firearm." Id. ¶¶28, 30.

"On October 18, 2016, [Burban] requested NBPD issue her a photographic identification card, pursuant to LEOSA, so that [she] could receive certification to carry a

concealed firearm." Id. ¶13.  However, the NBPD declined to issue her the requested identification.  Id.  Burban "sought clarification from the Lieutenant Key[4] and Richard Pike, Chief of Police for NBPD, regarding their denial of her request for an identification card."  Id. ¶31.  Burban asserts that Lieutenant Key and Chief Pike "were the final policymakers for the City, as their decisions "were not immediately or effectively reviewable."  Id. ¶46.

Lieutenant Key provided Burban a written response stating that Burban failed to satisfy the NBPD's Standing Operating Procedures (SOP).  Id. ¶32.  Specifically, Burban failed to satisfy SOP 4.02(G)(1)d, which requires that officers serve for a minimum of fifteen years, and SOP 4.02(G)(2)(a), which mandates that officers qualify with an NBPD Certified Firearms Instructor.  Id. ¶¶14, 18.  Additionally, Lieutenant Key implied that Burban did not retire in good standing in violation of SOP 4.02(G)(1)b.  Id. ¶¶16-17.  Lieutenant Key told Burban that "he would have no further communication regarding the matter," and "has not acknowledged Plaintiff's last communications asking for clarification on their denial." Id. ¶¶32-33.  As such, Burban retained legal counsel, who sent letters to Elaine Brown, Mayor of Neptune Beach, Andrew Hyatt, City Manager of Neptune Beach, and Chief Pike, requesting that they issue Burban an identification card.  Id. ¶¶34-35.  Counsel has not received a response.  Id. ¶36.  As of April 20, 2017, the City has not recognized Burban as a retired law enforcement officer under LEOSA.  Id. ¶37.

Based on the foregoing, on March 7, 2017, Burban initiated the instant lawsuit against the City by filing the Verified Complaint (Doc. 1).  On April 20, 2017, Burban

---

4       Burban does not provide Lieutenant Key's full name and title.  See generally Amended Complaint.

amended the Verified Complaint as of right.[5]   See generally Amended Complaint.

Burban brings a claim under 42 U.S.C. § 1983 (Section 1983) and alleges that the City

has deprived her of the right to carry a concealed firearm under LEOSA by failing to issue

her an identification card.   Id.   On May 4, 2017, the City filed the Motion in which it seeks

the dismissal of the Amended Complaint for failure to state a claim upon which relief can

be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)).

## II.   Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set

forth in the complaint as true.   See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's

World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable

inferences should be drawn in favor of the plaintiff.   See Randall v. Scott, 610 F.3d 701,

705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading

requirements.   Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004)

(citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint

should "'give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests.'"   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough

facts to state a claim that is plausible on its face."   Twombly, 550 U.S. at 570.   "A claim

has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556

---

[5]      Rule 15 of the Federal Rules of Civil Procedure (Rule(s)) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)."   On March 30, 2017, the City moved to dismiss the Verified Complaint under Rule 12(b)(6).   See Defendant City of Neptune Beach, Florida's Motion to Dismiss and Memorandum of Law (Doc. 6).

U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III. Discussion

Burban brings a claim under Section 1983 to vindicate the alleged violation of her right to carry a concealed firearm guaranteed by LEOSA. See generally Amended Complaint. "[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted). To state a claim for relief under Section 1983, a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" See Focus on the Family v. Pinellas Suncoast

Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted).[6]  "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989)) (emphasis in original).

In the Motion, the City contends that Burban has failed to state a claim that Section 1983 can redress.  See generally Motion.  Specifically, the City asserts that Burban has failed to allege that she has been deprived of a federal right because (1) LEOSA does not establish a private cause of action; (2) Burban has failed to plead that she is qualified; and (3) Burban has failed to allege a basis for holding the City liable.  Id.  In the Response, Burban unequivocally states that she does not assert a claim directly under LEOSA, but instead brings a claim under Section 1983 for the deprivation of her LEOSA rights.  See Response at 5.  Additionally, Burban contends that she has sufficiently pled facts demonstrating that she is qualified, and asserts that her allegations regarding the City's customs and policies provide a sufficient basis for municipal liability.  Id. at 12-16.  Here, the Court finds that the Motion is due to be granted because Burban has failed to allege the violation of a right that Section 1983 can redress.

In order to determine whether a particular statute provides a right such that its denial can be vindicated under Section 1983, courts apply the framework set forth by the Supreme Court in Blessing.  See Blessing, 520 U.S. at 340-41.  In Blessing, the Court

---

[6]    There is no dispute as to sufficiency of the allegations concerning the "under color of state law" element in the instant case.  See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) ("A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. 'The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual.'") (quotation and internal citation omitted).

instructed that a plaintiff must first demonstrate that the statute creates an individual right by satisfying three factors:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Id. Satisfaction of these factors raises "a rebuttable presumption that the right is enforceable under § 1983." Id. at 341. A defendant may rebut the presumption by showing that Congress "'specifically foreclosed a remedy under § 1983,'" either "expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id. (citation omitted).

As an initial matter, it is "incumbent upon [Burban] to identify with particularity the rights [she] claim[s], since it is impossible to determine whether [LEOSA], as an undifferentiated whole, gives rise to undefined 'rights.'" Id. at 342. Indeed, the Court must focus its analysis on the specific statutory provision at issue. In the Amended Complaint, Burban "alleges that LEOSA grants retired law enforcement officers[,] []including those who have retired from NBPD[,] the right to carry concealed firearms, including the right to carry them across state lines with the proper permit," and that "as a qualified retired law enforcement officer," she is entitled to this right. See Amended Complaint ¶ 39-40. Burban asserts that "[b]y denying certification as a retired law enforcement officer to Plaintiff, in the form of the identification card, despite Plaintiff's attempts to comply with the federal requirements, Defendant deprived Plaintiff of her right

to carry concealed firearms under LEOSA." Id. ¶42. Additionally, Burban alleges that the City disregarded "the clearly established rights of Plaintiff to receive an identification card upon meeting the requirements set forth by LEOSA." Id. ¶48. Thus, the essence of Burban's claim is that the City has deprived her of the right to carry a concealed firearm under LEOSA by setting more stringent requirements to obtain an identification card than LEOSA sets to be considered a qualified retired law enforcement officer.

Neither the Eleventh Circuit Court of Appeals, nor any district court in this Circuit, has addressed the question of whether LEOSA provides a federal right that an individual officer can enforce under Section 1983. Burban correctly notes that the only circuit court to address the issue is the District of Columbia Circuit, which decided in DuBerry v. District of Columbia, 824 F.3d 1046 (D.C. Cir. 2016) that LEOSA did create such a right. In DuBerry, former corrections officers sought firearms certifications under subsection § d(2)(B) in order to exercise their right to carry concealed firearms under LEOSA. Id. at 1048. In order to obtain the firearms certifications, the officers had to present a "Certification of Prior Law Enforcement Employment" from the District of Columbia Department of Corrections. Id. at 1050. The Department refused to issue the certificates based upon its belief that the officers did not fall within the definition of qualified retired law enforcement officer under LEOSA. Id. The officers filed suit under Section 1983 alleging that the District of Columbia Department of Corrections violated their right to carry concealed firearms. Id. The district court dismissed the complaint finding that the officers failed to state a claim under Section 1983. Id. However, the court reversed that decision. Id. at 1057. Applying the Blessing framework, the circuit court determined that "Congress intended the LEOSA to benefit individuals like [the plaintiff officers,]" the right

granted by LEOSA was neither "vague nor amorphous" nor was it "beyond the competence of the judiciary to enforce," and last that "LEOSA imposes a mandatory duty on the states to recognize the right it establishes." Id. at 1052-54 (quotations and citations omitted).

However, both before and after DuBerry, district courts, also applying the Blessing factors, have reached a contrary conclusion. See Henrichs v. Ill. Law Enforcement Training & Standards Bd., No. 15 C 10265, 2018 WL 572708 at *3 (N.D. Ill. Jan. 26, 2018); Mpras v. District of Columbia, 74 F. Supp. 3d 265, 269 (D.C. 2014); Ramirez v. Port Authority of New York and New Jersey, No. 15cv3225 (DLC), 2015 WL 9463185 at *5-6 (S.D.N.Y. Dec. 28, 2015) (determining in a different context that "LEOSA does not create an individual right actionable under § 1983.").[7] Examining the first Blessing factor, that "Congress must have intended that the provision in question benefit the plaintiff," Blessing, 520 U.S. at 340, the Henrichs court concluded that "LEOSA does not give concealed carry rights to any individual who satisfies its definition of 'qualified retired law enforcement officer.'" Henrichs, 2018 WL 572708 at *3. Instead, "LEOSA gives such rights to a 'qualified retired law enforcement officer' only if that individual has the 'identification required by' subsection d." Id. (emphasis in original); see also Mpras, 74 F. Supp. 3d at 269. Indeed, the Henrichs court rejected a contention similar to that of Burban, finding that "[t]here is no textual basis for treating 'qualified retired law enforcement officer' as the sole requirement for obtaining LEOSA rights; rather such an individual also must have a subsection (d) identification." Henrichs, 2018 WL 572708 at *5. The plain language of

---

[7]     The continuing viability of Mpras following DuBerry is uncertain. Although a sister court within the D.C. Circuit has rejected the contention that DuBerry abrogated Mpras because that court found DuBerry sufficiently distinguishable, see D'Aureli v. Harvey, No. 1:17-cv-00363 (MAD/DJS), 2018 WL 704733, at *4 (N.D.N.Y. Feb. 2, 2018), the undersigned is less certain that Mpras's conclusion that LEOSA does not create a right remediable under Section 1983 survives in the D.C. Circuit after DuBerry. Nevertheless this Court is not bound by DuBerry and, as will be discussed, finds the analysis of the court in Mpras more persuasive.

the statute suggests that "[b]oth criteria are necessary conditions for coverage under LEOSA, and only individuals who satisfy both may enforce their statutory rights under § 1983." Id.

Reading LEOSA in the way Burban suggests significantly expands the effect of LEOSA. Under Burban's reading of LEOSA, the statute would require states to authorize any retired officer who falls within its definition of a qualified retired law enforcement officer to carry a concealed weapon. However the purpose of LEOSA was more limited. The purpose of enacting LEOSA was:

> to authorize qualified off-duty law enforcement officers and qualified retired law enforcement officers carrying photographic identification issued by a governmental agency for which the individual is, or was, employed as a law enforcement officer, notwithstanding State or local laws, to carry a concealed firearm that has been shipped or transported in interstate or foreign commerce.

S. Rep. No. 108-29, at 1-2. To accomplish this purpose LEOSA created "a mechanism by which law enforcement officers may travel interstate with a firearm." Id. at 4. Specifically with regard to retired law enforcement officers, what LEOSA does provide is an exemption from state laws prohibiting the carrying of concealed firearms. Id. at 9. Notably, the legislative history of LEOSA explains:

> For a retried law enforcement officer to qualify for exemption from state laws prohibiting the carrying of concealed firearms, he or she must have retired in good standing; have been qualified by the agency to carry or use a firearm; have been employed at least fifteen[8] years as a law enforcement officer unless forced to retire due to a service-connected disability; have a non-forfeitable right to retirement plan benefits of the law enforcement agency; meet the same state firearms training and qualifications as an active officer; not be prohibited by Federal law from receiving a firearm; and be carrying a photo identification issued by the agency.

---

8      As mentioned, see supra at 3 n.3, on October 12, 2010, Congress amended LEOSA to reduce the required years of service from fifteen to ten.   See P.L. 111-272.

<u>Id.</u> at 9 (emphasis added).   Nothing in the text or legislative history of LEOSA supports a conclusion that Congress intended to expand the right to carry a concealed weapon to all former law enforcement officers who fell within the Federal statutory definition of a qualified officer, or that Congress intended to require all states to issue subsection (d) identification to any officer or retired officer that falls within the definition of a qualified law enforcement officer or qualified retired law enforcement officer.   Such a construction would do more than just exempt traveling officers from state laws prohibiting the carrying of concealed weapons.   It would affirmatively require all states, even those that themselves did not issue concealed carry permits, to begin issuing the identification that would do just that. Such a result is not in any way supported by the text or history of LEOSA.

Here, to the extent Congress intended to create any enforceable right under LEOSA it would be limited to exempting any qualified law enforcement or qualified retired law enforcement officer who has the required identification from the application of any state law prohibiting the carrying of concealed weapons.   Because Burban lacks the required identification card, the Court finds that Congress did not intend for Burban to benefit from the right to carry a concealed firearm under LEOSA.   <u>See</u> <u>id.</u> at *3 (finding that Congress did not intend to benefit plaintiffs who were "qualified retired law enforcement officers" under LEOSA, but lacked an agency-issued identification).

The Court is also persuaded by the <u>Henrichs</u> court's discussion of the third <u>Blessing</u> factor, that "the statute must unambiguously impose a binding obligation on the States," and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."   <u>Blessing, 520 U.S. at 341</u>.   Notably, nothing in the text of LEOSA directs a state to issue the identification required by subsection (d).   <u>Mpras, 74 F. Supp.</u>

3d at 270.   To the contrary, LEOSA leaves in place a state's own standards for "deciding to whom subsection (d) identifications will be issued."   Henrichs, 2018 WL 572708 at *4. As the Mpras court persuasively observed:

> Subsection (d) contains numerous references to actions that must be performed and qualifications that must be determined "by the agency from which the individual retired" or "by the State in which the individual resides" or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within the State" or "by any law enforcement agency within that State."

Mpras, 74 F. Supp. 3d at 270.   "These repeated references to actions taken by the state suggest that Congress intended to leave the standards and procedures for issuing the required photographic identification required by subsection (d) to the states."   D'Aureli, 2018 WL 704733 at *4.   As such, the Court finds that LEOSA does not require the City's standards for issuing identification cards to mirror the standards set forth in the statute for being a qualified retired law enforcement officer.   Accordingly, Burban's allegation that the City has deprived her of the federal right to carry a concealed firearm by setting the standards for acquiring an identification card higher than those enumerated in LEOSA is insufficient.   Burban has failed to allege that she has been deprived of a federal right, and as a result she has failed to state a claim for relief under Section 1983.   See D'Aureli, 2018 WL 704733, at **4-6 (dismissing a claim under Section 1983 because LEOSA does not confer the right to carry a concealed firearm upon those who lack identification cards); Henrichs, 2018 WL 572708 at **3-4 (same); Mpras, 74 F. Supp. 3d at 270 (same).

Notably, outside the context of Section 1983 claims, several federal and state courts have determined that States are under no obligation to issue identification cards to "qualified retired law enforcement officers" in order to permit the officers to exercise their right to carry concealed firearms.   For example, in Moore v. Trent, No. 09 C 1712, 2010

WL 5232727, at *4 (N.D. Ill. Dec. 16, 2010) and Johnson v. N.Y.S. Dep't of Corr. Servs., 709 F. Supp. 2d 178 (N.D.N.Y. 2010), the courts addressed whether LEOSA creates a private cause of action for those who have been denied subsection (d) identification cards. Moore, 2010 WL 5232727 at *2; Johnson, 709 F. Supp. 2d at 183. Ultimately, both courts determined that LEOSA does not create a private right of action because qualified retired law enforcement officers are not entitled to identification cards. Moore, 2010 WL 5232727 at **3-4; Johnson, 709 F. Supp. 2d at 185. The courts recognized that "the identification card required in § 926C(d) constitutes a reservoir of powers set aside for the States." Moore, 2010 WL 5232727 at *4; see also Johnson, 709 F. Supp. 2d at 185 ("Congress expressly left the authority to issue the identification described in subsection (d) in the hands of the relevant state agency.") (citing 18 U.S.C. § 926C(d)). Although the issue of "whether a statutory violation may be enforced through § 1983 'is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute,'" both require a determination regarding "whether Congress intended to create a federal right." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (emphasis in original). Thus, the Moore and Johnson courts' analysis is relevant to the Court's inquiry, and supports the Court's finding that Burban has failed to allege the violation of a federal right sufficient to sustain a Section 1983 claim.

Additionally, other courts have interpreted LEOSA in a similar fashion. In Friedman v. Las Vegas Metro. Police Dep't, No. 2:14-cv-0821-GMN-GWF, 2014 WL 5472604 (D. Nev. Oct. 24, 2014), the District of Nevada determined that it lacked federal question jurisdiction because the plaintiff's claims under a Nevada statute "establish[ing] the application procedure for individuals seeking to become certified as qualified

retirement law enforcement officers" did not turn on an interpretation of LEOSA. Id. at *4. The court recognized that Congress "intended for states to establish and enforce their own concealed firearm certification standards," and that "[r]ather than affirmatively requiring states to issue concealed carry licenses to retired police officers, LEOSA merely permits retired officers who already possess a concealed-carry permit to bring a concealed firearm across state lines." Id. at **4-5. Similarly, in Zarrelli v. Rabner, No. C-199-05, 2007 WL 1284947 (N.J. Superior Ct. May 3, 2007), the Appellate Division of the Superior Court of New Jersey held that LEOSA did not "require a State to issue a certification in order to permit an individual to qualify under the statute." Id. at *2. Further, in Foley v. Godinez, 62 N.E. 3d 286 (Ill. App. 1st Dist. 2016), the Appellate Court of Illinois, First District, denied mandamus relief because the issuance of identification cards is an act of discretion. Id. at 294. These opinions, of course, do not address the precise issue before the Court— namely, whether a plaintiff may bring a claim under Section 1983 based on her former employer's failure to issue her an identification card. Nevertheless, they support the conclusion that States may determine whether they wish to issue such identification cards, and if so, may set their own standards for the issuance of the cards to otherwise qualified retired law enforcement officers.

In Gonzaga Univ., the Supreme Court cautioned that nothing "short of an unambiguously conferred right" will "support a cause of action brought under § 1983." Gonzaga Univ., 536 U.S. at 283. LEOSA confers no such right. In reaching this conclusion, the Court finds the reasoning of Henrichs and Mpras more persuasive than that of DuBerry. Accordingly, the Court finds that Burban is not entitled to the issuance of an identification card under LEOSA. Because Burban has failed to allege that the City

deprived her of a federal <u>right</u>, she has failed to state a claim for relief under Section 1983. As such, the Motion is due to be granted and the case dismissed. The Court therefore need not address the parties' remaining arguments. <u>See</u> Motion at 5-6. In light of the foregoing, it is hereby

**ORDERED:**

**1.** Defendant City of Neptune Beach, Florida's Request for Oral Argument (Doc. 12) is **DENIED**.

**2.** Defendant City of Neptune Beach, Florida's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law (Doc. 11) is **GRANTED**, and this case is **DISMISSED**.

**3.** The Clerk of the Court is directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of March, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc 25
Copies to:
Counsel of Record